**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | |
|---|---|
| SAMUEL MALOY, *on behalf of himself and all others similarly situated*, </br></br>   Plaintiff, </br></br> v. </br></br> STUCKY, LAUER & YOUNG, LLP, </br></br>   Defendant. | ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) Case No. 1:17-cv-00336-TLS-PRC </br> ) </br> ) </br> ) |

**PLAINTIFF'S UNOPPOSED MOTION FOR CLASS CERTIFICATION AND
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff Samuel Maloy ("Plaintiff") respectfully moves this Court to enter an order:

1.  Preliminarily certifying a class of individuals for settlement purposes ("the Class") as set forth in the parties' proposed settlement agreement (the "Agreement"), attached as Exhibit 1;

2.  Preliminarily approving the Agreement pursuant to Rule 23 of the Federal Rules of Civil Procedure;

3.  Conditionally certifying Plaintiff as the named-representative of the Class;

4.  Conditionally certifying Plaintiff's counsel as counsel for the Class;

5.  Approving the form of the proposed class notice ("the Notice"), attached as Exhibit 1-A, and the parties' proposed method of distribution of the Notice to the Class, as set forth in the Agreement; and

6.  Setting a final fairness hearing to determine whether the proposed settlement is fair, adequate, and reasonable.

1

**I.    Introduction.**

Defendant Stucky, Lauer & Young, LLP ("Defendant") is alleged to have violated sections 1692g and 1692e of the Fair Debt Collection Practices Act ("FDCPA") with respect to the debt collection letters it sent to Indiana consumers. In particular, Plaintiff alleges that Defendant failed to provide proper disclosures mandated by the FDCPA regarding how consumers may dispute the validity of the debts they are alleged to owe, and that Defendant included other language that had the capacity to confuse or mislead consumers as to the character and amount of the debt. This case thus hinges on whether Defendant's standardized debt collection letters run afoul of the FDCPA. Defendant denies liability.

After discovery and arm's-length negotiations, the parties have reached an agreement to resolve this case whereby Defendant will create a settlement fund in the amount of $6,000.00, from which Defendant will pay the full statutory damages of $1,000.00 to Plaintiff. The remaining $5,000.00 shall be distributed *pro rata* to each member of the settlement Class. Additionally, subject to the Court's approval, Defendant will separately pay Plaintiff's attorney's fees, along with the costs of administering the settlement and providing direct mail notice to each member of the Class.

Plaintiff seeks certification of the Class and preliminary approval of the parties' settlement Agreement. Plaintiff and his counsel strongly believe that this settlement is fair, reasonable, and adequate, and in the best interests of class members. This Court should accordingly enter the accompanying order granting preliminary approval of the settlement, attached as Exhibit 1-B. Defendant consents to the requested relief.

**II.     Summary of the settlement.**

The parties' Agreement defines a settlement Class under Rule 23(b)(3) comprising all individuals in the state of Indiana to whom Defendant sent a letter based on the Template[1] in connection with the collection of a consumer debt on or after August 9, 2016 through August 9, 2017. In addition to Plaintiff, the parties have identified 925 other class members through discovery. Class members who do not exclude themselves from the settlement will receive a pro-rata share of the $5,000.00 set aside in the settlement fund. Thus, if no class member opts out, each class member would receive approximately $5.40. Class members will not need to submit a claim form, or any other documentation, to receive a settlement payment. To the extent any settlement checks go uncashed after reasonable steps are taken to forward checks to any forwarding addresses, such funds will be redistributed to Indiana Legal Services, Inc.—the *cy pres* recipient selected by the parties. None of the funds will revert back to Defendant.

In addition, Defendant will separately pay $1,000.00 to Plaintiff in statutory damages and for his service to the Class. Defendant also will separately pay the costs of notice and administration of the settlement, plus an award of attorney's fees and expenses to class counsel, subject to Court approval.

The Agreement requires direct mail notice to the Class. Defendant has in its possession the names and recent addresses of each class member, and will provide the foregoing information to Plaintiff's counsel, who will serve as the Class administrator, and will take all reasonable steps

---

[1] The Template is defined as the standardized collection letter used by Defendant to collect consumer debts containing language substantially similar to the letter sent to Plaintiff attached as Exhibit A to the original complaint filed in this case, Doc. 1-1.

necessary to ensure that each Class member receives direct mail notice, including updating addresses for any mail returned as undeliverable.

## III.     This Court should preliminarily certify the Class.

To certify the proposed settlement Class, Plaintiff must satisfy each of the four requirements of Rule 23(a), referred to as numerosity, commonality, typicality, and adequacy of representation, as well as one of the requirements Rule 23(b). *Lucas v. GC Servs. L.P.*, 226 F.R.D. 337, 339 (N.D. Ind. 2005) (certifying FDCPA class). Because certification is sought in the context of a settlement, the requirements of Rule 23(a) and 23(b)(3) are readily satisfied here. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

### A.     The Class satisfies the requirements of Rule 23(a).

#### 1.     The Class is sufficiently numerous.

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no absolute number that satisfies numerosity, there is a general consensus that more than 40 class members is sufficient. *See* Newberg, Class Actions § 3.05 at 3–25 ("the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone"); 3B Moore's Federal Practice ¶ 23.05(1) at 23–143–45 (2d ed. 1995) ("while there are exceptions, numbers in excess of forty, particularly numbers in excess of one hundred . . . have sustained the [Rule 23(a)(1)]

requirement") (collecting cases). Some courts have found as few as 25 members to be sufficient. *See, e.g.*, *Talbott v. GC Servs. Ltd. P'ship*, 191 F.R.D. 99, 102 (W.D. Va. 2000).

Here, Defendant mailed materially identical letters to 926 individuals in Indiana during the class period, all of which contained identical language that Plaintiff contends violated the FDCPA. Thus, the Class is sufficiently numerous such that joinder of all members would be impracticable. Further, there is no difficulty in ascertaining the members of the Class, as Defendant previously mailed the letters at issue to each class member and thus possesses their names and recent addresses.

### 2. There are questions of law and fact common to the Class.

"Rule 23(a)(2) requires the presence of questions of law or fact common to the class. However, the presence of differing legal inquiries and factual discrepancies will not preclude class certification." *Jackson v. Collections Acquisition Co., LLC*, No. 4:13-CV-00570-JAR, 2013 WL 5592603, at *2 (E.D. Mo. Oct. 9, 2013). The commonality element is generally satisfied when "[d]efendants have engaged in a standardized course of conduct that affects all class members," such as "when all class members received the same collection letter." *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 697 (S.D. Fla. 2004). Standard form collection letters are often present in FDCPA class actions, and also often satisfy the commonality requirement in Rule 23(a). *Spice v. Blatt, Hasenmiller, Liebsker & Moore LLC*, No. 1:16-CV-366-TLS, 2018 WL 525723, at *5 (N.D. Ind. Jan. 24, 2018).

Here, the questions of fact and law at issue are entirely common. The claims asserted by Plaintiff and the Class originate from the same conduct, practice, and procedure on the part of Defendant: its issuance of standardized debt collection letters that all contain identical language forming the basis of the alleged violations of the FDCPA. All class members have identical

FDCPA claims based upon identical deficient disclosures in the debt collection letters they received. Thus, if brought and prosecuted individually, the claims of each class member would require proof of the same material facts. *See, e.g.*, *Roundtree v. Bush Ross, P.A.*, 304 F.R.D 644, 659 (M.D. Fla. 2015) ("Bush Ross issued standardized initial debt collection letters . . . . The question of whether each of these actions by Bush Ross violates the FDCPA is a legal question common to all members of the putative class and requires proof of the same material facts.").

For these reasons, claims brought as a result of a form collection letter are routinely certified as class actions. *See Tripp v. Berman & Rabin, P.A.*, 310 F.R.D. 499, 505 (D. Kan. 2015) (mailing a form collection letter to all class members satisfies the commonality requirement of Rule 23); *Talbott v. GC Servs. Ltd. P'ship*, 191 F.R.D. 99, 103 (W.D. Va. 2000) ("Mailing a standardized collection letter satisfies commonality and has been the basis for certification in similar cases."); *Swanson v. Mid Am., Inc.*, 186 F.R.D. 665, 668 (M.D. Fla. 1999) ("To establish commonality, it is sufficient that Plaintiff allege that all class members received the same collection letter.").

### 3.     Plaintiff's claims are typical of those of the Class.

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). That is, a class representative's claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998). "Once again, the standard form

collection letters that are often present in FDCPA class actions usually satisfy the typicality requirement in Rule 23(a)." *Spice*, 2018 WL 525723, at *6.

Here, Plaintiff and the members of the Class all allegedly were injured by way of a common practice employed by Defendant. Plaintiff possesses the same interests and has the same alleged injuries as each class member, and assert identical claims on behalf of all absent class members. Typicality is satisfied because Plaintiff received the same standardized collection letter as all class members, and asserts the same claims under 15 U.S.C. §§ 1692g and 1692e on behalf of all class members. *See Hale v. AFNI, Inc.,* 264 F.R.D. 402, 405 (N.D. Ill. 2009) (finding the plaintiff's claim was "typical to the class because it arises from the same form letter allegedly received by all class members, and it is based on the same legal theory that the letter violates the FDCPA"); *Gaalswijk-Knetzke v. Receivables Mgmt. Servs. Corp.*, No. 8:08-CV-493-T-26TGW, 2008 WL 3850657, at *3 (M.D. Fla. Aug. 14, 2008) ("Because the same or substantially similar letter was sent to all class members as well as the class representative, the Court finds that typicality has been satisfied.").

### 4. Plaintiff and his counsel will fairly and adequately protect the Class's interests.

Next, this Court must determine whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between the named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "To adequately represent the class, a named plaintiff must have a sufficient stake in the outcome of the case to ensure zealous advocacy and must not have antagonistic or conflicting claims with other

7

class members. A plaintiff must also show that their legal counsel is experienced and competent." *Spice*, 2018 WL 525723, at *6 (citing *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)).

Here, Plaintiff is a member of the Class, as he, like all other class members, is an individual who received an allegedly violative collection letter from Defendant.  Plaintiff has no interests antagonistic to the Class, as he has suffered the same injury stemming from the Defendant's letter. Plaintiff's claims are perfectly aligned with those of the Class, and Plaintiff is committed to vigorously pursuing class members' claims in the best interests of the Class.  Plaintiff will, as he has to date, fairly and adequately protect the interests of the Class.  And, as noted below, Plaintiff has retained counsel experienced in complex consumer class action litigation. As a result, Plaintiff and his counsel satisfy Rule 23(a)(4).

### 5. Plaintiff's counsel should be appointed Class counsel.

Plaintiff's proposed class counsel is Joseph Panvini of the Thompson Consumer Law Group, PLLC.  Class counsel will vigorously pursue this action and protect the interests of all absent class members. In addition to satisfying the adequacy prong of Rule 23(a)(4), class counsel also satisfies the considerations of Rule 23(g) and should be appointed class counsel.

Mr. Panvini and the other attorneys at Thompson Consumer Law Group, PLLC are experienced in complex class action litigation, including consumer protection class action litigation. *See, e.g.*, *Rectenwald v. Capes, Sokol, Goodman & Sarachan, P.C.*, No. 4:16-cv-00676-RLW (E.D. Mo. June 14, 2017; Nov. 16, 2017) (certifying Mr. Panvini and Thompson Consumer Law Group as class counsel and granting final approval of class action settlement in FDCPA case); *Jordan v. Freedom Natl. Ins. Services Inc.*, CV-16-00362-PHX-DLR, 2016 WL 5363752, at *4 (D. Ariz. Sept. 26, 2016) (appointing Thompson Consumer Law Group, PLLC as class counsel); *Dove v. Moody, Jones, Ingino & Morehead, PA*, No. 3:15-cv-00251 (M.D. Fla. April 18, 2016)

(granting final approval of class settlement under the Electronic Fund Transfer Act).  In fact, this Court has found that "Thompson Consumer Law Group, PLLC is experienced handling FDCPA class actions, has knowledge of the applicable law, and has the appropriate resources to commit to representing both the Plaintiff and the proposed class in this action." *Spice*, 2018 WL 525723, at *7 (appointing Mr. Panvini and Thompson Consumer Law Group, PLLC as class counsel).

Accordingly the proposed class counsel is well qualified to represent Plaintiff and the Class in this action.

### B.     The settlement Class satisfies the requirements of Rule 23(b)(3).

In addition to meeting the four requirements of Rule 23(a) and the requirements of Rule 23(g), parties seeking class certification must demonstrate that the action is maintainable under Rule 23(b).  Here, the proposed Class satisfies Rule 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual members, and, on balance, class treatment is superior to other methods available for adjudicating this controversy.

####     1.    Common questions of law and fact predominate over any potentially individualized inquiries.

Rule 23(b)(3) is designed to promote economy and efficiency in actions that are primarily for money damages. Where common questions "predominate," a class action can achieve economies of time, effort, and expense as compared to separate lawsuits; class treatment also permits adjudication of disputes that could not be economically litigated individually, and avoids inconsistent outcomes because the same issue can be adjudicated the same way for the entire class. Fed. R. Civ. P. 23(b)(3), advisory committee's note (1966).  In determining whether common questions predominate, the Court will look to whether "common evidence, as opposed to evidence that is individual to each class member, could suffice to show the alleged violation." *Spice*, 2018

WL 525723, at *7 (citing *Messner v. Northshore Univ. HelathSys.*, 669 F.3d 802, 818 (7th Cir. 2012)).

Here, common questions include whether Defendant is a debt collector and whether the form debt collection letter it sent to each individual violates the FDCPA. Whether Defendant is a debt collector subject to the FDCPA's requirements is a common question because "[t]he inquiry as to whether a person is a debt collector is not case specific, but rather depends on whether that person 'regularly' collects debts—in other words a person cannot be considered a debt collector with regard to one debtor and not a debt collector with regard to another debtor." *Schutz v. Arrow Fin. Servs., LLC*, 465 F. Supp. 2d 872, 875 (N.D. Ill. 2006). Likewise, the collection letter Defendant sent to each individual is based on a form or template, which under the class definition contains language alleged to violate the FDCPA. "Because the class claim is based upon a version of the collection letter that was delivered to all putative class members and can be proven with common evidence, individualized inquires are not necessary and do not defeat class certification." *Jackson*, 2013 WL 5592603, at *4.

Thus, courts routinely find that claims based on form debt collection letters satisfy the predominance requirement of Rule 23(b)(3). *See, e.g.*, *Tripp*, 310 F.R.D. at 506 (finding predominance where "plaintiff's claim that defendants' form collection letter violates § 1692g(a)(1) and § 1692e(2) of the FDCPA is shared by all class members and it relies on common evidence to answer common questions—*i.e.,* a standardized letter sent to all class members."); *Gaalswijk-Knetzke*, 2008 WL 3850657, at *4 (finding common issues predominate where "all of the claims of the named Plaintiff and the class members are based on the same legal theories, the same form collection letters, and the same remedy"); *Robles v. Corp. Receivables, Inc.*, 220 F.R.D.

10

306, 315 (N.D. Ill. 2004) (predominance requirement met where the violations all arose from the same form collection letter).

Because the FDCPA is a strict liability statute in which liability is based upon the objective unsophisticated consumer standard, individualized issues such as a consumer's subjective confusion will not predominate.  *Spice*, 2018 WL 525723, at *8 (citing *Ruth v. Triumph P'ships*, 577 F.3d 790, 800 (7th Cir. 2009)); *see also Ditty v. Check Rite, Ltd.*, 182 F.R.D. 639, 644 (D. Utah 1998) ("The FDCPA is a strict liability statute and it is the sending of the illegal letter that creates liability rather than any necessary response on the part of the debtor.").

Thus, Rule 23(b)(3) predominance is satisfied here.

### 2. A class action is superior to hundreds of suits.

When evaluating the superiority requirement of Rule 23(b)(3), the Court must consider (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).  Because the claims in this case all arise from the same conduct and the same form debt collection letters, a class action is the superior vehicle for determining the rights of absent class members.

No single member of the Class that Plaintiff seeks to represent has an interest in controlling the prosecution of this action because the claims of all members of the Class are identical, as the allegations here involve standardized conduct, and each class member is likely to have suffered relatively small statutory damages. *See Roundtree*, 304 F.R.D at 662 ("Here, given the large number of claims, the relatively small amount of damages available, the desirability of consistently

11

adjudicating the claims, the high probability that individual members of the proposed classes would not possess a great interest in controlling the prosecution of the claims, and the fact that it would be uneconomical to litigate the issues individually, a class action is the superior method by which Roundtree and the class members' claims under the FDCPA should be adjudicated."); *Gaalswijk-Knetzke*, 2008 WL 3850657, at *5 ("Congress provided for class actions [under the FDCPA] as a means for recovery to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action."); *Jackson*, 2013 WL 5592603, at *4 ("class-action treatment is the superior method for resolving these controversies because they involve plaintiffs each with relatively small claims, who might not otherwise seek or obtain relief absent a class action."). The Seventh Circuit finds that class action claims under the FDCPA are superior to individual claims, even if class recovery is *de minimus*, because they offer recovery to those who would not bring an individual suit and they deter future violations of the FDCPA. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) (opining that a recovery of even $0.28 per class member would not defeat superiority).

Therefore, the superiority requirement of Rule 23(b)(3) is satisfied.

**IV.     This Court should preliminarily approve the settlement as fair, reasonable, and adequate.**

Rule 23(e) requires that the Court make a preliminary determination of fairness:

Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

Manual For Complex Litigation § 21.632 (4th ed. 2004); *see also* 4 Alba Conte & Herbert B. Newberg, Newberg On Class Actions, § 11.25 (4th ed. 2002). After the preliminary fairness evaluation has been made, the class has been certified for settlement purposes, and notice has been issued, this Court will hold a final fairness hearing to show that the proposed settlement is truly fair, reasonable, and adequate. *See* Manual For Complex Litigation § 21.633-34; 4 Newberg, *supra* at § 11.25.

"The Seventh Circuit has identified a number of factors used to assess whether a settlement proposal is fundamentally fair, adequate, and reasonable: (1) the strength of plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed." *Chapman v. Bowman, Heintz, Boscia & Vician, P.C.*, No. 2:15-CV-120 JD, 2015 WL 9478548, at *7 (N.D. Ind. Dec. 29, 2015) (citing *Synfuel Techns., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)). Here, each of these factors support approval of the settlement.

### A. The merits of the Plaintiff's case weighed against the terms of the settlement.

Courts construing claims under 15 U.S.C. § 1692g generally find the language at issue in Defendant's collection letter to violate the Act. *See Busch v. Valarity, LLC*, No. 4:12-CV-2372-JAR, 2014 WL 466221, at *4 (E.D. Mo. Feb. 5, 2014) (collecting cases on both sides). Likewise, the claims alleged under 15 U.S.C. § 1692e also find support from case law. *See Avila v. Riexinger & Associates, LLC*, 817 F.3d 72, 76 (2d Cir. 2016). Even a single violation of the FDCPA is sufficient to establish a debt collector's civil liability under section 1692k. *Frye v. Bowman, Heintz, Boscia, Vician, P.C.*, 193 F. Supp. 2d 1070, 1076 (S.D. Ind. 2002); *Raimondi v. McAllister*

*& Assocs., Inc.*, 50 F. Supp. 2d 825, 829 (N.D. Ill. 1999). While Defendant disputes liability, Plaintiff believes the claims will be meritorious, and this is reflected in the settlement, where Plaintiff would receive the maximum statutory damages award under the FDCPA.

That Plaintiff and the Class are unlikely to recover more through litigation supports approval of the settlement. The FDCPA provides for a maximum of $1000 in statutory damages to a plaintiff. 15 U.S.C. § 1692k(a)(2)(A). For all other class members, the FDCPA provides for a maximum of $500,000 or 1% of the debt collector's net worth, whichever is less, to be distributed among the other class members. Here, after written discovery and production of financial business records, Defendant's book value was established and the class settlement fund of $5,000 is more than 1% of the book value net worth. This is therefore an excellent result for the Class. Though even if the settlement were less, this Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000).

      **B.**     **The current stage of the proceedings and the complexity and expense of further litigation.**

Many courts have recognized that "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *In Re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003). The parties have already conducted written discovery, and have briefed a motion for judgment on the pleadings, and thus have an adequate appreciation of the merits of the case. The settlement is reached as the result of months of arm's-length negotiations between counsel. The settlement allows the parties to avoid the uncertainty of

14

continued litigation and allows the conservation of resources—both among the parties and this Court—in avoiding further protracted briefing on summary judgment or on other pretrial and trial matters. *Chapman*, 2015 WL 9478548, at *7 ("while the Defendant denies liability and the parties disagree about the merits, preliminary approval of the settlement is appropriate to avoid the uncertainties of continued litigation"). Settlement is also favored considering the vagaries of litigation and "the significance of immediate recovery by way of the compromise [compared] to the mere probability of relief in the future, after protracted and expensive litigation." *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 701 (E.D. Mo. 2002) (quoting *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 326 (N.D. Ga. 1993)).

### C. The amount of opposition to the settlement and the opinion of competent counsel.

Here, the parties are in agreement as to the settlement, and at this stage there is no opposition to the settlement. "In evaluating the settlement, the Court[] 'should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.' " *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) (quoting Manual For Complex Litigation § 30.42)); *see also In re Domestic Air Transp.*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel."). The Court may approve the class settlement as it is in line with that provided for in other FDCPA class settlements. *See, e.g.*, *Chapman*, 2015 WL 9478548, at *8 ("By paying $15 to each class member, Defendant will pay a total of $3,030, an amount that Chapman asserts exceeds 1 percent of Defendant's book value net worth.

15

This settlement appears to represent a fair, reasonable, and adequate settlement in light of the possibility of protracted litigation and disputed issues of liability."); *Kausch v. Berman & Rabin, P.A.*, No. 4:15-CV-00537-AGF, 2016 WL 1576333, at *2 (E.D. Mo. Apr. 12, 2016) ($15 per class member and $1,500 to named plaintiff); *Schell v. Frederick J. Hanna & Assocs., P.C.*, No. 15-418, 2016 WL 1273297, at *3 (S.D. Ohio Mar. 31, 2016) ($10 per class member and $1,500 to named plaintiff); *Schuchardt v. Law Office of Rory W. Clark*, No. 15-01329, 2016 WL 232435, at *2 (N.D. Cal. Jan. 20, 2016) ($10 per class member and $2,000 to named plaintiff).

Further, Defendant's agreement not to oppose payment of costs incurred and attorneys' fees of up to $30,000.00 is fair and reasonable. In addition to the costs and time spent to date, Plaintiff's counsel will incur additional time in attending approval and fairness hearings and in administering the class. Plaintiff's counsel will be incurring the costs of distributing the notice and settlement checks to the Class, as well as preparing the documentation of such for the court's approval. Furthermore, Plaintiff's counsel's request for fees and costs will be still be limited by the Court's review to ensure that they were reasonably incurred.

**V.     This Court should approve the proposed notice plan.**

Under Rule 23(e), this Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." *See* Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). If class members can be identified and are given individual notice, there is no requirement for notice by publication or other means. *See In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, No. 06-02069, 2008 WL 1990806, at *2 (N.D. Cal. May 5, 2008).

The aforementioned settlement terms are fair, adequate, and reasonable, given that class members will be given individual notice of this action and of the proposed settlement, and they will be given the opportunity to object to the settlement or exclude themselves from the settlement entirely and not be bound by the Court's judgment. The notice will be sent by U.S. mail to each of the members of the Class, which is the best notice practicable. The proposed notice, which is attached to this motion, provides fair, reasonable, and adequate notice to the Class of the proposed settlement and of their rights. The plan complies with Rule 23 and due process because, among other things, it informs class members, directly, of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the class and claims asserted; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that class members may make an appearance through counsel; (5) information regarding the named plaintiff's request for statutory damages and reimbursement of his attorney's fees and expenses; and (6) how to make inquiries. Fed. R. Civ. P. 23(c)(2)(B). In short, this notice plan ensures that class members' due process rights are amply protected and should be approved. *See* Fed. R. Civ. P. 23(c)(2)(A).

**VI.     Scheduling a final approval hearing is appropriate.**

Finally, the last step in the settlement approval process is a final approval hearing at which this Court may hear all evidence and argument necessary to make its final settlement evaluation. Fed. R. Civ. P. 23(e)(2). This Court will determine after the final approval hearing whether the settlement should be approved, and whether to enter a judgment and order of dismissal with prejudice under Rule 23(e). The parties request that the Court set a date for a hearing on final

approval, at the Court's convenience, approximately 120 days after the Court's preliminary approval of the settlement.

**VII.     Conclusion and prayer for relief.**

Plaintiff respectfully requests that this Court enter the accompanying Order granting preliminary approval of the above-described class action settlement. As noted, Defendant consents to the relief requested herein.

Dated: March 30, 2018

                              Respectfully submitted,

                              s/ Joseph Panvini
                              Joseph Panvini
                              Thompson Consumer Law Group, PLLC
                              5235 E. Southern Ave., D106-618
                              Mesa, AZ 85206
                              602-388-8875
                              866-317-2674 facsimile
                              jpanvini@consumerlawinfo.com
                              Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I certify that on March 30, 2018, the foregoing was filed using the CM/ECF system of the Court which sent notification of the same to Defendant through counsel of record below as follows:

Briane M. House
Skiles Detrude
150 East Market Street, Suite 200
Indianapolis, IN 46204
bhouse@skilesdetrude.com

                              s/ Joseph Panvini
                              Joseph Panvini